IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**ESTELLA L. MORRIS**                                                                   **PLAINTIFF**

V.                                        4:21CV00406 JM

**DENIS MCDONOGH,**
**SECRETARY OF THE DEPARTMENT**
**OF VETERANS AFFAIRS,**
**in his official capacity**                                                            **DEFENDANT**

## ORDER

Pending is the Defendant's Motion for Summary Judgment. Plaintiff has responded and Defendant has responded. For the reasons set out below, the Motion is granted.

**I.      Facts**

Plaintiff Estella Morris has been an employee of the Central Arkansas Veterans Healthcare System ("CAVHS"), a Department of Veterans Affairs facility, since 1981. She started as a GS-5 Social Work Associate in the independent living program. She completed a Master of Social Work degree and was promoted to Program Manager for the CAVHS Comprehensive Homeless Center (the "Homeless Center" or "Program") with a GS-9 pay scale in 1987. Plaintiff was promoted to a GS-13 in 1995 and to GS-13 Step 10 in 2006. Plaintiff also earned a Doctor of Philosophy in Social Work in 2003. (Pl. Statement, ECF No. 31-16).

After beginning her career at the VA, Plaintiff joined the Arkansas National Guard. She served in the Guard for seven years and in the Navy Reserve for three years. During her active duty, she incurred a veteran service-connected disability. In 2015 her disability rating was 50 percent, and she currently has a disability rating of 100 percent. (Pl. Dep., ECF No. 31-3 at p. 20-27).

By all accounts, Plaintiff was instrumental in growing the Homeless Center and creating a Drop-In Day Treatment Center for the community. When she began with the Program, she had a staff of three employees and her staff has grown to more than 40. However, Plaintiff's relationship with her supervisors has been strained at times.

In late 2012, Diane Pettus, a member of Plaintiff's staff contacted Catina McClain, M.D., Acting Chief of Staff of Mental Health Service, with allegations of a hostile work environment in the Homeless Center. On November 29, 2012, McClain issued a memo to Plaintiff as Program Manager and to Lynn Hemphill, the Supervisor of the Comprehensive Homeless Program. (ECF No. 31-11). According to the memo, "[a] fact finding conducted as a result of an allegation of hostile work environment has identified several areas of concern, including inappropriate actions and behaviors on the part of leadership within the program." *Id.* The memo included the results of an initial fact finding that had been conducted based on the allegation. McClain listed three areas of concern: program management and operations, communication style, and unacceptable behaviors. McClain included example complaints under each area of concern, some of which were isolation of staff and limiting communication with other mental health staff; fosters a culture of negativity; and verbally abusive, demeaning, and harsh communication with staff. McClain asked Plaintiff and Hemphill to respond to the allegations. In the meantime, Plaintiff and Hemphill were detailed to duties on the North Little Rock Campus and were relieved of their responsibility for approving leave or reviewing and assigning work in the day treatment program. *Id.*

McClain and another VA administrator interviewed Program staff about Pettus's allegations. Plaintiff and Hemphill responded in writing to the allegations recounting the fact that Ms. Pettus identified six occasions of perceived harassment from September 5, 2012 to

September 12, 2012 in her allegation, but she had not expressed her concerns about the incidents to any supervisor in the Program. (ECF No. 31-12). Plaintiff took exception to the questions presented to her staff during the fact finding arguing they were not parallel with Ms. Pettus's claims. *Id.* Further, Plaintiff was not identified in Pettus's complaint, only Mr. Hemphill, but Plaintiff's behavior had been included in the fact finding. Plaintiff and Hemphill responded to each example contained in McClain's memorandum. They noted that it was difficult to address the perceptions of others and, had these perceptions been presented to them by staff, they would have sought a quick and mutually agreeable resolution. *Id.* Plaintiff and Hemphill alleged that the fact finding was conducted with the intent to prove a hostile work environment against them. They stated that it was their perception that Mental Health Operations was strategically positioning itself for a hostile take-over of program management. *Id.*

No disciplinary action was taken as a result of the investigation and the allegation of hostile work environment was found to be unsubstantiated. Plaintiff and Hemphill returned to their positions in January 2013. Lisa Martone, a member of the Mental Health Executive Leadership Team, was asked to spend more time in Plaintiff's program area to "see if there were any things that we could do to improve communications, or for those staff who had reported concerns to get more details about what those concerns might have entailed." (McClain Dep., ECF No. 31-30 at p. 12; 31-45 at p. 13-14).

Plaintiff felt that Martone usurped Plaintiff's role as Program Manager. During the time that Martone was detailed to the Program, the Homeless Center was being relocated to a new building on Main Street in Little Rock, a project that Plaintiff had planned and designed. Plaintiff believed that McClain did not want black leadership in charge of the more prominent Main

Street location and that McClain detailed Martone to Plaintiff's program to facilitate a change of management.

Plaintiff filed an informal EEO complaint in late 2012 or early 2013 against McClain for detailing Plaintiff out of her position as a result of the fact finding. (McClain Dep., ECF No. 31-45 at p. 6-11). Plaintiff filed an informal complaint of hostile work environment with the EEO Office in February of 2013 based upon specific interactions with Martone. (Pl's Dep., ECF No. 24-1 at p 66-72). Martone remained in the Homeless Center until June, 2013. While there, Martone rated Plaintiff as fully successful in her mid-year performance review. She added handwritten comments regarding growth and the accompanying challenges that would face Plaintiff within the Homeless Program. She wrote: "New plan 5-9-13. Currently considered fully successful. Significant changes in the new plan from previous years will make obtaining exceptional/outstanding ratings more challenging this year." (ECF No. 31-15).

On March 6, 2015, a vacancy was posted for the Chief of Social Worker Services position at CAVHS. (Dec. of Angela Uekman, ECF No. 24-2 on p.1). The application period closed on March 18, 2015. A list of qualified applicants was prepared and referred to Karen Scott, the hiring official for the position. (Pl. Dep., ECF No. 24-1 at p. 99).

In July, 2015, Plaintiff applied for a 10-Point Veteran Preference which was granted. More than five months after the application period closed, Plaintiff applied for the Chief of Social Worker Services position. Based upon her application, Plaintiff was granted a first-round interview and was selected to move forward to the second-round interview. At the conclusion of the interviews, Plaintiff and Anne Wright were the top two candidates. Wright was also a CAVHS employee. (Dec. of Angela Uekman, ECF No. 24-2 at p. 2). Before being hired at

4

CAVHS, Wright had been the Director of Social Worker Services at UAMS. (Pl. Dep., ECF No. 31-3 at p. 102).

On February 10, 2016, Karen Scott emailed administration officials including McClain with the applicants' scores from the application review and each round of interviews, as well as her recommendation. She explained:

> I checked references on both Dr. Morris and Mrs. Wright. Ms. Wright's references from UAMS as well as CAVHS were excellent. Dr. Morris'[s] references were good--she was identified as a leader in developing the Homeless Program for CAVHS, however, issues were identified with 'micro-management' and at times difficulty with interpersonal skills when situations were not as she expected. Timeliness in responding to action items was identified as a concern.
>
> Overall, my recommendations is still for Michelle Wright. I believe Ms. Wright possesses the ability to lead Social Work Service, building a team within Social Work and with services that interact with Social Work. Ms. Wright has demonstrated experience in a complex teaching facility (UAMS) in leading the change that we need at CAVHS.

*Id.* In closing, she asked for their thoughts. (Email, ECF No. 31-19). McClain responded, in part, "I concur with your recommendation." *Id.* In September 2016, Wright was selected as Chief of Social Worker Services.

On January 5, 2017, Plaintiff filed an official Complaint of Employment Discrimination with the Veterans Affairs ("VA") claiming non-selection for Chief of Social Worker Services based upon race-black and reprisal. (ECF No. 31-1). In addition to her failure to promote claim, Plaintiff alleged she had been subjected to a hostile work environment including McClain's "witch hunt" fact finding in 2012, her assignment of Martone to supervise Plaintiff, "roadblocks" McClain placed to keep Plaintiff from progressing, and Plaintiff's failure to be promoted to the position of Chief of Social Worker Services. The VA Office of Resolution Management accepted most of the claims and commenced an investigation. (ECF No. 31-2). There is no information in the record regarding the investigation.

Two years later in May 2019, Plaintiff received a memo from Michael Ballard, Acting Chief of Staff for Mental Health and Plaintiff's supervisor, notifying her that, as a result of an Administrative Investigative Board ("AIB") related to Homeless Center operations, certain actions would be implemented. (Memo, ECF No. 31-29). Ballard detailed Robin Atkins, Deputy Chief of Physical Medicine and Rehabilitation Services, to the Homeless Center for at least 90 days to submit reports to Ballard regarding daily operations and workplace climate. Ballard requested that Plaintiff complete training regarding the expectations of a manager or leader. Plaintiff's selection official authority was rescinded until further notice. Plaintiff was further tasked with implementing and reporting specific audits, developing and implementing orientation for staff and a safety policy for the Homeless Center. *Id.* Again, there is no evidence in the record regarding the investigation.

Plaintiff filed another Complaint of Employment Discrimination (the "2019 complaint") with the VA the next month claiming discrimination on the bases of her race-black, color-black, age, reprisal, and disparate treatment. She alleged that Ballard's rescission her selection official authority and his assignment of a temporary supervisor were discriminatory actions. (ECF No. 31-4; 31-5). The VA Office of Resolution Management accepted most of the claims and commenced an investigation. (ECF No. 31-5). There is no evidence in the record regarding the investigation.

In 2021, Plaintiff filed a third Complaint of Employment Discrimination (the "2021 complaint") with the VA based upon race, color, reprisal, age, gender, hostile work environment, and disparate treatment. Plaintiff alleged that Ballard intentionally failed to secure a promotion for her to a GS-14 pay level and made a statement to her attorney that he gave Plaintiff

6

outstanding performance evaluations because he was scared she would file an EEO complaint on him. (EEO Comp., ECF No. 31-9; Pl. Dep. ECF No. 24-1 at p. 62-63).

The opportunity for a pay upgrade was made available for social workers starting in 2019 based upon a change in qualification standards. Ballard submitted a request for promotion on Plaintiff's behalf on March 23, 2021. (ECF No. 31-40). On April 5, 2021, Russell Hebert in the Human Resources Office disapproved Plaintiff's request. He stated:

> The position does not meet the complexity according to the qualification standards. Social Work program managers at the GS-14 grade are assigned to manage, direct, and oversee a major specialty program(s) at the facility, VISN, or VA Central office level and given the small program size and lack of complexity this position does not meet the GS-14 criteria.

(ECF No. 31-40 at p. 2). Plaintiff contends that Ballard's statements in the request sabotaged her opportunity for the promotion.

On May 13, 2021, Plaintiff filed this suit against the Defendants. On October 4, 2022, Plaintiff filed an additional suit against the Defendants. The cases were consolidated later that month.

## II. Standard

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, [to] point out to the District Court, that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted) brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

### III. Analysis

**A. Failure to Promote**

**1. Chief of Social Worker Services position in 2016**

The Court applies the *McDonnell Douglas* burden-shifting approach to all of Plaintiff's claims. *See Torgerson v. City of Rochester*, 643 F.3d 1031, 1044 (8th Cir. 2011) (en banc) (where a plaintiff "lacks evidence that clearly points to the presence of an illegal motive," *McDonnell Douglas* applies.) To establish a prima facie case of failure-to-promote based upon

8

race under Title VII[1] and age under the ADEA, a plaintiff must show (1) that she is a member of a protected group, (2) that she was qualified and applied for a promotion to an available position, (3) she was rejected, and (4) similarly situated employees, not part of the protected group, were promoted instead. *Jackson v. United Parcel Serv. Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011). It is undisputed that Plaintiff is an African American woman over the age of 40 who applied for and was qualified for the Chief of Social Worker Services position in 2016. Anne Wright, a white woman, was selected for the position.

The burden of production now shifts to the Defendant to articulate a legitimate, nondiscriminatory reason for promoting Wright instead of Plaintiff. This burden is one of production, not persuasion, and is not an "onerous" one. *Torgerson*, 643 F.3d at 1047. The Defendant provided a legitimate, nondiscriminatory reason for denying Plaintiff the promotion: Wright had more favorable references. (Email, ECF No. 31-19 at p.2-3; Pl's Dep., ECF No. 24-1 at p. 161-162). Hiring a candidate whose credentials make her the best choice is a legitimate, non-discriminatory reason for an employer's decision. *See Lidge-Myrtil v. Deere & Co.*, 49 F.3d 1308, 1311 (8th Cir. 1995).

Under the *McDonnell Douglas framework*, the burden shifts back to Plaintiff to show a genuine doubt that the Defendant's reason is pretextual. As evidence of pretext, Plaintiff contends that she should have been chosen because she was the most qualified candidate. She points out that (1) she scored higher on the application review, (2) Defendant failed to follow the veteran preference pass-over procedures, (3) she was interviewed by different people than Wright, and (4) she was not interviewed by the Pentad. Plaintiff acknowledges that Wright was

---

[1] Plaintiff cannot state a claim for gender discrimination here because the individual promoted was female.

qualified for the Chief of Social Worker Services position but argues that her qualifications are not relevant because of the irregularities in the hiring process.

The qualifications of Plaintiff and Wright are relevant. "If the comparison reveals that the plaintiff was only similarly qualified or not as qualified as the selected candidate, then no inference of discrimination would arise." *Torgerson*, 643 F.3d at 1049 (ellipses omitted). When giving her recommendation to hire Wright, Karen Scott acknowledged that both candidates were qualified, but pointed out that Wright's references were better than Plaintiff's. Plaintiff's references mentioned issues with Plaintiff's management and interpersonal skills. "[I]t is the employer's role to identify those strengths that constitute the best qualified applicant." *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 916 (8th Cir. 2007).

Plaintiff argues that the irregularities in the hiring process provide evidence of pretext. Specifically, Plaintiff points out that Wright's application scores were averaged incorrectly. It appears that Plaintiff is correct. Exhibit 20 to Plaintiff's response (ECF No. 31-20) shows that Wright's average score was tabulated as 38 when in fact it should have been 33. However, every applicant's average score was miscalculated except for the first applicant on the list.[2] After the application rank, seven applicants were given interviews. The average scores were correctly tabulated, and Wright had the highest average score. Plaintiff's average score was the fourth highest of the seven applicants' scores. Only three applicants moved on to the second round of interviews, Plaintiff, Wright, and Kelley Williams who was also an internal employee. Wright and Plaintiff scored the highest. Wright's average score for the second interview was 95.5% and Plaintiff's was 75.5%. These scores were calculated correctly. There is no inference of discrimination with regard to the tabulation of the scores.

---

[2] Out of the remaining nine applicants, five applicants' average scores were higher than their actual average score and four applicants' average scores were lower than their actual average score.

Plaintiff also argues that she was treated differently in the interview process because she was not interviewed by the same people as the other applicants, and she was not granted an interview with Pentad. As the Defendant explains, Plaintiff submitted her application for the Chief of Social Worker Services position on August 10, 2015, almost five months after the application period closed. (ECF No 24-2). By the time Plaintiff submitted her application, the candidates had completed the first round of interviews, Wright and Williams had completed the second round of interviews and they had met with Social Work supervisors. Wright was selected as the top candidate at that time. Wright was interviewed by Pentad on August 19, 2015, nine days after Plaintiff first submitted her application. The fact that Plaintiff's hiring process looked different than the other candidates is not evidence of pretext under these circumstances.

Plaintiff argues that the Defendant's failure to follow veteran preference pass-over procedures is evidence of pretext. Plaintiff does not cite, and the Court has been unable to find, any authority to support this argument. The Defendant argues that veteran preference pass-over procedures did not apply here because Plaintiff and Wright were CAVHS employees when they applied for the position and because the position was a promotion for them. *See* Angela Uekman Dec., ECF No. 24-2 at ¶ 8. The Court agrees. See Human Resource Management Letter (HRML), No. 05-14-05, dated May 31, 2014 ("For current Federal employees, Veterans' preference does not apply to promotions, reassignment, change to lower grade or transfer."). Even if the Defendant interpreted the veterans' preference procedures incorrectly, Plaintiff has not presented any evidence that the misinterpretation was made based upon racial or age-related animus.

Plaintiff simply has not presented evidence that the Defendant's proffered explanation for promoting Wright instead of Plaintiff to the Chief of Social Worker Services position was

11

pretextual. Defendant's motion for summary judgment of Plaintiff's 2016 failure to promote claim is granted.

### 2. GS-14 Promotion in 2021

Plaintiff alleges that she was discriminated against based upon her race, age, gender, and her prior EEO activity when she was not promoted from GS-13 step 10 to GS-14. Again, Plaintiff must show that (1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) a similarly situated employee, not a part of the protected group, was promoted instead.

Defendant contends that Plaintiff was not qualified for the promotion to GS-14 as evidenced by the Human Resources Office's disapproval of the promotion. Plaintiff argues that Ballard sabotaged her request by stating that Plaintiff had been performing the same duties for nearly three decades and by stating that there had been no change in her assigned duties during that time. Plaintiff contends that her duties changed when she grew the Homeless Program from a staff of three to a staff of 40 and added a community drop-in treatment center. The Court finds that there are sufficient facts for a jury to determine that Plaintiff was qualified for the promotion.

As evidence of a similarly situated employee who was not a member of a protected group and received the promotion, Plaintiff points to Michael Ritchie, a Caucasian male, who according to Plaintiff, is significantly younger than her. The issue is that Ritchie was not similarly situated to Plaintiff. Ritchie applied for and was promoted to a newly created GS-14 position, Deputy Associate Chief of Staff of Mental Health. Plaintiff did not apply for the position. (Pl. Dep., ECF No. 24-1 at p. 65). Ritchie's promotion was not similar to Plaintiff's request for promotion in that he was promoted to a new position to reach GS-14 level and

Plaintiff applied to have her current position reclassified as a GS-14 position. Plaintiff has not provided evidence of any other GS-13 social worker who was granted a GS-14 promotion based upon the new qualification standards. In fact, Ballard stated that he did not submit requests for any of the other five Social Worker Program Managers. He stated that Plaintiff's position had the greatest scope and complexity of all the GS-13 Social Worker Program Managers and if she did not qualify for the promotion then none of the others would have qualified either. (Ballard Statement, ECF No. 31-37 at p. 11).

Plaintiff has failed to provide any evidence for a jury to determine that she was treated differently than an applicant for this promotion who was not a member of a protected group. Defendant's motion for summary judgment of Plaintiff's race, sex, and age claim regarding the 2021 failure to promote is granted.

### B. Race Discrimination/Disparate Treatment

In order to prove discrimination, a plaintiff must first establish a prima facie case by showing that he or she: (1) is a member of a protected group, (2) was meeting the legitimate expectations of the employer, (3) suffered an adverse employment action, and (4) there are facts that permit an inference of discrimination. *Zhuang v. Datacard Corp.*, 414 F.3d 849, 854 (8th Cir. 2005).

The parties do not dispute that Plaintiff is a member of a protected class or that she was meeting the legitimate expectations of the VA. The dispute arises as to whether Plaintiff suffered an adverse employment action and whether there are any facts that tend to show race discrimination.

As evidence of adverse employment actions, Plaintiff points to the Defendant's failure to promote her to Chief of Social Worker Services, the investigations based upon employee

complaints in 2012 and 2019, the temporary rescission of her hiring authority, and temporary supervision once she was returned to her position. The Court finds that Plaintiff's allegations do not reach the adverse employment threshold because they did not result in a material change in employment such as change in salary, benefits, or responsibilities. *Cruzan v. Special Sch. Dist., No. 1*, 294 F.3d 981, 984 (8th Cir. 2002) ("Mere inconvenience without any decrease in title, salary, or benefits is insufficient to show an adverse employment action"). Plaintiff was not suspended, terminated, or disciplined. Her yearly evaluations were positive and the changes in hiring authority were temporary. "Not everything that makes an employee unhappy is an actionable adverse employment action ... an adverse employment action is exhibited by a material employment disadvantage, such as a change in salary, benefits, or responsibilities." *LaCroix v. Sears, Roebuck, and Co.*, 240 F.3d 688, 691 (8th Cir. 2001) (citations omitted). Minor changes in working conditions that inconvenience the employee or alter the employee's work responsibilities do not rise to the level of an adverse employment action. *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005). "Internal investigations into employee complaints are not adverse employment actions when they do not result in any change in form or condition to the employee's employment." *Altonen v. City of Minneapolis*, 487 F.3d 554, 560 (8th Cir. 2007) (citing *Jones v. Fitzgerald*, 285 F.3d 705, 715 (8th Cir. 2002).

    Plaintiff also points to Michael Ballard's delayed submission of her application for a pay-grade promotion and his answer to the question of Plaintiff's job changes as adverse employment actions. While Ballard's action may have had a tangential effect on her employment, it did not rise to the level of an ultimate employment decision intended to be actionable under Title VII. *Ledergerber v. Stangler*, 122 F.3d 1142, 1144 (8th Cir. 1997).

Plaintiff has failed to provide evidence sufficient for a jury to determine that she suffered an adverse employment action. Even if the Court were to assume Plaintiff suffered an adverse employment action, Plaintiff has not presented any evidence that permits an inference of race discrimination. Defendant's motion for summary judgment is granted as to Plaintiff's claim of race discrimination.

**C. Age Discrimination**

For the same reasons, Plaintiff has not made a prima facie case of age discrimination. The only age-related claims that Plaintiff makes are that Anne Wright and Michael Ritchie were significantly younger than her when they received promotions. As the Court has stated, those claims fail. Defendant's motion for summary judgment is granted as to Plaintiff's claim of age discrimination.

**D. Hostile Work Environment**

Under Title VII of the Civil Rights Act of 1964, an employer may not discriminate against an employee "with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race...." 42 U.S.C. § 2000e–2(a)(1). The creation of a hostile work environment is one way in which an employer can practice discrimination. To establish a prima facie case, a plaintiff must show: "(1) that they belong to a protected group; (2) that they were subject to unwelcome harassment; (3) a causal nexus between the harassment and their membership in the protected group; [and] (4) that the harassment affected a term, condition, or privilege of employment." *Dowd v. United Steelworkers of Am., Local No. 286*, 253 F.3d 1093, 1101 (8th Cir. 2001) (citation omitted). To establish the fourth element, Plaintiff must show that the harassment was "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment." *Clay v. Credit Bureau Enterprises,*

*Inc.,* 754 F.3d 535, 540 (8th Cir. 2014) (quoting *Malone v. Ameren UE*, 646 F.3d 512, 517 (8th Cir. 2011)).

Plaintiff's problems, i.e., the investigations followed by the rescission of authority and the supervision, resulted from two staff members' allegations that they were subjected to hostile work environments and from promotions she applied for and did not receive. The incidents were not frequent, severe, physically threatening and did not unreasonably interfere with Plaintiff's work performance. *See Lopez v. Whirlpool Corp.,* 989 F.3d 656, 663 (8th Cir. 2021) (citing *Harris v. Forklift Sys., Inc*., 510 U.S. 17, 21–22 (1993) (looking at these circumstances to determine a hostile work environment)). The Court finds that these incidents, viewed individually or as a whole, were not sufficiently severe or pervasive to create a hostile work environment.

In her Amended Complaint (Case No. 4:21CV406), Plaintiff includes an allegation that Defendant terminated her on-call pay "when she received her Caucasian overseer, Lisa Martone[.]" (Am. Comp. ECF No. 7 at p. 6-7). Plaintiff has admitted that the on-call pay allegation was never explicitly included in any EEO complaint. She states, however, that the allegation fits squarely within her 2017 EEO allegations regarding "roadblocks" McClain put in her way. The Court is skeptical that this claim is "like or reasonably related to the substance of" the 2017 complaint. *See Williams v. Little Rock Mun. Water Works,* 21 F.3d 218, 222 (8th Cir. 1994). However, it is unnecessary to make that determination because Plaintiff has failed to present any evidence of a causal connection between the discontinuation of on-call pay and her race, sex, or age. Except for Plaintiff's statements that she believes the removal of her on-call pay to be related to the 2012 fact finding and the assignment of Lisa Martone, there is no evidence in the record related to on-call pay at all.

**E. Retaliation**

Title VII prohibits employer retaliation against employees who engage in a protected activity like filing an EEO complaint. 42 U.S.C.2000e–3. To prove a prima facie case of unlawful retaliation, employees must demonstrate that (1) they engaged in a statutorily protected activity, (2) the employer took adverse employment action against them, and (3) a causal connection exists between the employee's protected activity and the employer's adverse employment action. *AuBuchon v. Geithner*, 743 F.3d 638, 641 (8th Cir. 2014) (citing *Gilbert v. Des Moines Area Cmty. Coll.*, 495 F.3d 906, 917 (8th Cir. 2007)). "[T]he threshold of proof necessary to establish a prima facie case is minimal." *Young v. Warner-Jenkinson Co., Inc.*, 152 F.3d 1018, 1022 (8th Cir. 1998) (citations omitted). "Even at summary judgment, '[a] plaintiff can establish a causal connection between his complaints and an adverse action through circumstantial evidence, such as the timing of the two events.'" *Wilson v. Ark. Dep't of Human Servs.*, 850 F.3d 368, 373 (8th Cir. 2017) (quoting *Turner v. Gonzales*, 421 F.3d 688, 696-97 (8th Cir. 2005)). However, "[g]enerally, more than a temporal connection between the protected conduct and the adverse employment action is required to present a genuine factual issue on retaliation." *Bainbridge v. Loffredo Gardens, Inc.*, 378 F.3d 756, 761 (8th Cir. 2004) (quoting *Kiel v. Select Artificials, Inc.*, 169 F.3d 1131, 1136 (8th Cir. 1999) (en banc)).

Plaintiff contacted the EEO Office in late 2012 or early 2013 about interactions with McClain, filed an informal complaint of discrimination against Martone in 2013, and formal complaints of employment discrimination with the VA in 2017, 2019, and 2021. The same acts that Plaintiff claims were discriminatory she also alleges were done in retaliation for her complaints. She claims that she was retaliated against for her initial complaint by subjecting her to the fact-finding in 2012, an AIB investigation in 2019, rescission of her selecting official

17

hiring authority during the investigations, assignment of a temporary supervisor, and failing to promote her to GS-14. *See Morris v. McDonough, et al*, Case No. 4:22CV956 at p. 17-18.

The 2012 fact finding and placement of Lisa Martone as a supervisor in Plaintiff's department cannot be part of Plaintiff's claim of retaliation because her EEO activity started because of these actions by McClain and Martone. As stated, the Court finds that the AIB investigation, the temporary rescission of her hiring authority, and the temporary placement of a supervisor are not adverse employment actions.

The Defendant's failure to promote Plaintiff to the Chief of Social Worker Services position is an adverse employment. However, over three years elapsed between Plaintiff's 2013 EEO complaint and the selection of Anne Wright in September of 2016. This three-year gap belies any plausible causal connection between this complaint and Plaintiff's non-selection. *See Kenney v. Bd. of Trustees of Univ. of Arkansas*, No. 2020 WL 6387490, at *10 (E.D. Ark. Oct. 30, 2020).

As stated, the Court finds that Plaintiff's failure to be promoted to a GS-14 pay grade is not an adverse employment action. By remaining in her same position, Plaintiff has offered no evidence of "changes in pay, benefits, seniority, or responsibility" that are the hallmarks of a retaliation claim. *See Tademe v. Saint Cloud State Univ.*, 328 F.3d 982, 992 (8th Cir. 2003) ("decision not to raise Tademe's salary was not an adverse employment action because Tademe's salary was not decreased or otherwise diminished in any way."); *Wilson v. Wal-Mart Stores, Inc.*, 2006 WL 318828, at *2 (E.D. Ark. Feb. 9, 2006).

Even if Plaintiff's failure to secure a GS-14 pay grade promotion is an adverse employment action, Plaintiff's claim fails. It is a stretch of the facts to conclude that Ballard's actions caused her promotion to be denied. He did not have the authority to do so. Russel Hebert

denied Plaintiff's promotion. There is no allegation that Hebert knew of Plaintiff's EEO activity. Ballard, in recommending the promotion, commented that Plaintiff had been performing her job duties for 30 years, the amount of time Plaintiff had held the Program Manager position. The statement was technically accurate. Ballard checked the box stating that the promotion was not fiscally supported. *See* ECF No. 31-40. However, Plaintiff has not proven it was a false statement and Hebert did not cite the lack of fiscal support as a reason for the denial. Further, there is no evidence of causal connection based upon the temporal proximity. Plaintiff's 2019 EEO complaint and Ballard's submission of the request were almost two years apart. Considering Plaintiff's argument that Ballard delayed the submission and should have submitted it a year earlier, the two were still a year apart. *See Sisk v. Picture People, Inc.,* 669 F.3d 896, 901 (8th Cir. 2012) ("More than two months is too long to support a finding of causation without something more.")

Finally, Plaintiff contends that Ballard's comment to her lawyer during a deposition is evidence of a causal connection. Ballard commented that he never gave Plaintiff any rating below outstanding because he was concerned that Plaintiff would perceive it as retaliation for her previous EEO action. (Ballard Dep., ECF No. 31-32 at p. 17). The Court does not find Ballard's statement to be indicative of retaliation. It tends to prove that Plaintiff's EEO activity may have served to insulate her from lower performance ratings even though Ballard perceived that Plaintiff lacked collegiality and the ability to appropriately interact with supervisors. *See Wallace v. Sparks Health Sys.*, 415 F.3d 853, 858 (8th Cir. 2005) ("filing an EEOC complaint does not insulate an employee from discipline for ... disrupting the workplace").

**IV. Conclusion**

For these reasons, Defendant's motion for summary judgment (ECF No. 23) is GRANTED.

IT IS SO ORDERED this 23rd day of October, 2023.

_____
James M. Moody Jr
United States District Judge